UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. CR 08-713(B)-DSF |
| Plaintiff, | ) **S E C O N D** |
| v. | ) **S U P E R S E D I N G** |
| | ) **I N D I C T M E N T** |
| ROGELIO SENDIS-RAMIREZ, | ) |
|   aka "Rogelio Sendiz-Ramirez," | ) [21 U.S.C. § 846: Conspiracy |
|   aka "Juan," | ) to Distribute and Possess with |
|   aka "Roger," | ) Intent to Distribute Controlled |
| SALVADOR SENDIS-RAMIREZ, | ) Substances; 21 U.S.C. |
|   aka "Salvador Sendiz- | ) §§ 841(a)(1), (b)(1)(A)(ii), |
|     Ramirez," | ) (b)(1)(A)(viii), (b)(1)(B)(ii), |
|   aka "Sal," | ) (b)(1)(B)(viii): Possession |
|   aka "Salva," | ) with Intent to Distribute and |
| JOSE FELIX-BARRAZA, | ) Distribution of Controlled |
|   aka "Chepe," | ) Substances; 18 U.S.C. |
|   aka "Compadre," | ) § 981(a)(1)(C), 21 U.S.C. |
|   aka "Compa," | ) § 853, and 28 U.S.C. § 2461(c): |
|   aka "Don Felix," | ) Criminal Forfeiture] |
|   aka "Don Jose," | ) |
| NEL LNU, | ) |
|   aka "Natanael," | ) |
| JULIO VALDEZ, | ) |
|   aka "El Viejo," | ) |
|   aka "Daniel Gamez Castro," | ) |
| CLAUDIA LNU, | ) |
| OMAR LNU, | ) |
| GUSTAVO ROMAN, | ) |
|   aka "Gordito," | ) |
| ANGELITA SENDIS-RAMIREZ, | ) |
|   aka "Angela," | ) |
| HARRY MADERA, | ) |
|   aka "Boricua," | ) |
| DAVID ORTIZ, | ) |

```
 1 ║ DANIEL ZAVALA,                        )
   ║   aka "Perico,"                       )
 2 ║ JESUS MAGANA,                         )
   ║   aka "Jesse,"                        )
 3 ║ MANUEL RIVAS,                         )
   ║   aka "Manny,"                        )
 4 ║ KEVIN CLEGG,                          )
   ║   aka "Whitey,"                       )
 5 ║ DARRYL CROZIER,                       )
   ║ JAMIE GAETA,                          )
 6 ║ JESSIE DIAZ III,                      )
   ║ PAUL KEESEY,                          )
 7 ║ THOMAS MEREDITH,                      )
   ║ RICHARD OLIVER,                       )
 8 ║ JAMES HERMOSILLO,                     )
   ║   aka "Bones,"                        )
 9 ║ ANTONIO SANCHEZ,                      )
   ║   aka "Tony,"                         )
10 ║ EDUARDO GUTIERREZ-QUINTERO,           )
   ║   aka "Neto,"                         )
11 ║   aka "Eddie,"                        )
   ║ JUAN FRANCISCO SOTO,                  )
12 ║ MARTIN HERNANDEZ, JR.,                )
   ║ LEONEL MEDINA-RIOS,                   )
13 ║ FERNANDO ROBLEDO,                     )
   ║ MARTIN HERNANDEZ, SR.,                )
14 ║ AMALIA HERNANDEZ,                     )
   ║ ARACELI LNU,                          )
15 ║ CARLOS ALVARADO-MEDINA,               )
   ║ JOSE JOHNNY COVARRUBIAS-              )
16 ║   QUINTERO,                           )
   ║ CARLOS SANDOVAL-CARBAJAL,             )
17 ║ BLADY ZAZUETA-FELIX,                  )
   ║ DARIO OCEGUERA-MENDOZA,               )
18 ║ JESUS URIARTE-MADRID,                 )
   ║ RICARDO RUBIO-GARCIA,                 )
19 ║ BEATRIZ LAUREL,                       )
   ║ ROGELIO CARRILLO-VERDUZCO,            )
20 ║   aka "Verduzco,"                     )
   ║   aka "El Charro,"                    )
21 ║ CARLOS TEYTUD-VILLANUEVA,             )
   ║   aka "Abuelo,"                       )
22 ║   aka "Abuelito,"                     )
   ║ VANESSA GARCIA,                       )
23 ║   aka "Vane,"                         )
   ║   aka "Came,"                         )
24 ║ DAVID PEREZ FRANQUI,                  )
   ║   aka "Macias Ruvalcaba               )
25 ║       Mardonio,"                      )
   ║   aka "Maceton," and                  )
26 ║ HECTOR APARICIO-ORTEGA,               )
   ║   aka "Orejon,"                       )
27 ║                                       )
   ║             Defendants.               )
28 ║                                       )
   ║ _____       )
```

1    The Grand Jury charges:

2                            COUNT ONE

3                        [21 U.S.C. § 846]

4    A.   OBJECTS OF THE CONSPIRACY

5         Beginning on a date unknown to the Grand Jury and continuing

6    to on or about August 24, 2010, within the Central District of

7    California, and elsewhere, defendants ROGELIO SENDIS-RAMIREZ,

8    also known as ("aka") "Rogelio Sendiz-Ramirez," aka "Juan," aka

9    "Roger" ("R. SENDIS"), SALVADOR SENDIS-RAMIREZ, aka "Salvador

10   Sendiz-Ramirez," aka "Sal," aka "Salva" ("S. SENDIS"), JOSE

11   FELIX-BARRAZA, aka "Chepe," aka "Compadre," aka "Compa," aka "Don

12   Felix," aka "Don Jose" ("FELIX"), NEL "LAST NAME UNKNOWN"

13   ("LNU"), aka "Natanael" ("NEL"), JULIO VALDEZ, aka "El Viejo,"

14   aka "Daniel Gamez Castro" ("VALDEZ"), CLAUDIA LNU ("CLAUDIA"),

15   OMAR LNU ("OMAR"), GUSTAVO ROMAN, aka "Gordito" ("ROMAN"),

16   ANGELITA SENDIS-RAMIREZ, aka "Angela" ("A. SENDIS"), HARRY

17   MADERA, aka "Boricua" ("MADERA"), DAVID ORTIZ ("ORTIZ"), DANIEL

18   ZAVALA, aka "Perico" ("ZAVALA"), JESUS MAGANA, aka "Jesse"

19   ("MAGANA"), MANUEL RIVAS, aka "Manny" ("RIVAS"), KEVIN CLEGG, aka

20   "Whitey" ("CLEGG"), DARRYL CROZIER ("CROZIER"), JAMIE GAETA

21   ("GAETA"), JESSIE DIAZ III ("DIAZ"), PAUL KEESEY ("KEESEY"),

22   THOMAS MEREDITH ("MEREDITH"), RICHARD OLIVER ("OLIVER"), JAMES

23   HERMOSILLO, aka "Bones" ("HERMOSILLO"), ANTONIO SANCHEZ, aka

24   "Tony" ("SANCHEZ"), EDUARDO GUTIERREZ-QUINTERO, aka "Neto," aka

25   "Eddie" ("GUTIERREZ"), JUAN FRANCISCO SOTO ("SOTO"), MARTIN

26   HERNANDEZ, JR. ("HERNANDEZ JR."), LEONEL MEDINA-RIOS ("MEDINA"),

27   FERNANDO ROBLEDO ("ROBLEDO"), MARTIN HERNANDEZ, SR. ("HERNANDEZ

28   SR."), AMALIA HERNANDEZ ("A. HERNANDEZ"), ARACELI LNU

                              - 3 -

("ARACELI"), CARLOS ALVARADO-MEDINA ("ALVARADO"), JOSE JOHNNY
COVARRUBIAS-QUINTERO ("COVARRUBIAS"), CARLOS SANDOVAL-CARBAJAL
("C. SANDOVAL"), BLADY ZAZUETA-FELIX ("ZAZUETA"), DARIO OCEGUERA-
MENDOZA ("OCEGUERA"), JESUS URIARTE-MADRID ("URIARTE"), RICARDO
RUBIO-GARCIA ("RUBIO"), BEATRIZ LAUREL ("LAUREL"), ROGELIO
CARRILLO-VERDUZCO, aka "Verduzco," aka "El Charro" ("CARRILLO"),
CARLOS TEYTUD-VILLANUEVA, aka "Abuelo," aka "Abuelito"
("TEYTUD"), VANESSA GARCIA, aka "Vane," aka "Came" ("V. GARCIA"),
DAVID PEREZ FRANQUI, aka "Macias Ruvalcaba Mardonio," aka
"Maceton" ("PEREZ"), HECTOR APARICIO-ORTEGA, aka "Orejon"
("APARICIO"), co-conspirators Jesus Ruiz Sandoval, aka "Jorge
Cuevas-Mares" ("Sandoval"), Nicolas Sendis, aka "Nico" ("N.
Sendis"), Octavio Raya-Ortega, aka "Chino" ("Raya-Ortega"), and
Martin Manjarrez-Arreola ("Manjarrez-Arreola"), and others known
and unknown to the Grand Jury, conspired and agreed with each
other to knowingly and intentionally commit the following
offenses as defined in Title 21, United States Code, Sections
841(a)(1), (b)(1)(A)(ii), and (b)(1)(A)(viii):

1.   To distribute at least five kilograms of a mixture or
substance containing a detectable amount of cocaine, a Schedule
II narcotic drug controlled substance;

2.   To possess with intent to distribute at least five
kilograms of a mixture or substance containing a detectable
amount of cocaine, a Schedule II narcotic drug controlled
substance;

3.   To distribute at least 500 grams of a mixture or
substance containing a detectable amount of methamphetamine, or

1  at least 50 grams of methamphetamine, a Schedule II controlled

2  substance; and

3      4.   To possess with intent to distribute at least 500 grams

4  of a mixture or substance containing a detectable amount of

5  methamphetamine, or at least 50 grams of methamphetamine, a

6  Schedule II controlled substance.

7  B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE

8       ACCOMPLISHED

9      The objects of the conspiracy were to be accomplished in

10 substance as follows:

11     1.   Defendants R. SENDIS and S. SENDIS would distribute

12 quantities of methamphetamine for resale and would coordinate the

13 use of couriers to distribute the methamphetamine and collect the

14 proceeds from the sales of the methamphetamine.

15     2.   Defendants FELIX, NEL, CLAUDIA, and OMAR would act as

16 Mexico-based sources of supply of cocaine and methamphetamine,

17 distributing cocaine and methamphetamine to co-conspirators in

18 Los Angeles, California, and other locations, for further

19 distribution.

20     3.   Defendant VALDEZ would supply large quantities of

21 methamphetamine for resale to defendants R. SENDIS and MADERA.

22 With defendants CLAUDIA and OMAR, VALDEZ would coordinate the

23 delivery of methamphetamine to Los Angeles, California, and other

24 locations, from Mexico.

25     4.   Defendant ROMAN would broker transactions of

26 methamphetamine and cocaine between co-conspirators and would

27 transport drug proceeds to an unindicted co-conspirator.

28

- 5 -

1       5.    Defendants A. SENDIS, MADERA, ORTIZ, ZAVALA, MAGANA,

2   and RIVAS would assist defendants R. SENDIS and S. SENDIS in

3   distributing drugs or collecting drug proceeds on behalf of the

4   conspiracy.

5       6.    Defendants RIVAS, CLEGG, CROZIER, GAETA, DIAZ, KEESEY,

6   MEREDITH, OLIVER, HERMOSILLO, and SANCHEZ would purchase

7   methamphetamine from defendants R. SENDIS and S. SENDIS and

8   resell it to others.

9       7.    Defendant GUTIERREZ would transport and store

10  methamphetamine on behalf of defendant VALDEZ.

11      8.    Defendant SOTO would assist defendants VALDEZ and

12  GUTIERREZ in transporting and storing methamphetamine.

13      9.    Defendant HERNANDEZ JR. would transport methamphetamine

14  on behalf of defendant FELIX from Phoenix, Arizona, to members of

15  the conspiracy in Los Angeles, California, and other locations.

16  HERNANDEZ JR. would also transport money from the sale of the

17  methamphetamine back to Phoenix, Arizona.

18      10.   Defendants MEDINA, ROBLEDO, and HERNANDEZ SR. would

19  receive methamphetamine from defendants FELIX and HERNANDEZ, JR.

20  and distribute the methamphetamine to others.

21      11.   Defendant A. HERNANDEZ would transport and store drug

22  proceeds, and conduct surveillance, on behalf of defendants

23  HERNANDEZ JR. and HERNANDEZ SR.

24      12.   Defendant ARACELI would coordinate the sale and

25  transportation of methamphetamine for further distribution by

26  other co-conspirators in the Los Angeles, California area.

27      13.   Defendant ALVARADO would transport and store

28  methamphetamine on behalf of other members of the conspiracy.

1    14.   Defendant COVARRUBIAS, on behalf of defendant FELIX,
2  would receive and store methamphetamine in Phoenix, Arizona,
3  after it was shipped from Mexico to Arizona.   COVARRUBIAS would
4  also arrange for the methamphetamine to be transported to members
5  of the conspiracy in Los Angeles, California.   COVARRUBIAS would
6  also collect the proceeds from the sale of methamphetamine and
7  ship the drug proceeds back to Mexico.

8    15.   Defendants C. SANDOVAL and ZAZUETA would transport
9  kilogram quantities of cocaine from Mexico to Southern
10 California, on behalf of defendant NEL, for the purpose of
11 further distributing the cocaine.

12   16.   Defendants OCEGUERA and URIARTE would receive cocaine
13 for further distribution from defendant C. SANDOVAL, on behalf of
14 defendant NEL.

15   17.   Defendants RUBIO and LAUREL would assist in
16 transporting and storing cocaine that was driven from Mexico to
17 Southern California on behalf of defendant NEL.

18   18.   Defendant CARRILLO and unidentified co-conspirators
19 would supply cocaine and methamphetamine to co-conspirator
20 Sandoval for distribution to others, including co-conspirator
21 N. Sendis.

22   19.   Defendant TEYTUD and unidentified co-conspirators would
23 assist defendant CARRILLO in supplying cocaine and
24 methamphetamine to co-conspirator Sandoval for distribution to
25 others by delivering cocaine and methamphetamine to Sandoval on
26 behalf of CARRILLO and delivering drug proceeds from Sandoval to
27 CARRILLO.

28

- 7 -

1    20.   Defendant V. GARCIA would assist co-conspirator

2  Sandoval in distributing cocaine and methamphetamine to others,

3  including co-conspirator Raya-Ortega.

4    21.   Defendants PEREZ and APARICIO would assist co-

5  conspirator Raya-Ortega in distributing cocaine and

6  methamphetamine to others.

7    22.   The defendants would often speak in Spanish and use

8  coded language when discussing issues related to the drug

9  conspiracy.

10 C.   OVERT ACTS

11    In furtherance of the conspiracy and to accomplish the

12 objects of the conspiracy, defendants R. SENDIS, S. SENDIS,

13 FELIX, NEL, VALDEZ, CLAUDIA, OMAR, ROMAN, A. SENDIS, MADERA,

14 ORTIZ, ZAVALA, MAGANA, RIVAS, CLEGG, CROZIER, GAETA, DIAZ,

15 KEESEY, MEREDITH, OLIVER, HERMOSILLO, SANCHEZ, GUTIERREZ, SOTO,

16 HERNANDEZ JR., MEDINA, ROBLEDO, HERNANDEZ SR., A. HERNANDEZ,

17 ARACELI, ALVARADO, COVARRUBIAS, C. SANDOVAL, ZAZUETA, OCEGUERA,

18 URIARTE, RUBIO, LAUREL, CARRILLO, TEYTUD, V. GARCIA, PEREZ,

19 APARICIO, co-conspirators Sandoval, N. Sendis, Raya-Ortega, and

20 Manjarrez-Arreola, and others known and unknown to the Grand

21 Jury, committed various overt acts within the Central District of

22 California, and elsewhere, including, but not limited to, the

23 following:

24    1.   On or about May 31, 2007, defendant CARRILLO and co-

25 conspirator Sandoval, in a telephone conversation using coded

26 language, discussed the fact that Sandoval owed CARRILLO $645,000

27 for previous drug shipments CARRILLO had supplied to Sandoval,

28

- 8 -

1  and that Sandoval had previously given CARRILLO $248,000, so the

2  balance Sandoval owed to CARRILLO was $397,000.

3      2.   On or about June 2, 2007, defendant CARRILLO, in a

4  telephone conversation using coded language, told co-conspirator

5  Sandoval that CARRILLO had delivered approximately 90 kilograms

6  of cocaine to Sandoval.

7      3.   On or about June 2, 2007, defendant CARRILLO, in a

8  telephone conversation using coded language, asked co-conspirator

9  Sandoval when defendant V. GARCIA would be arriving at Sandoval's

10  location to deliver drug proceeds and pick up more drugs for

11  distribution to others, and Sandoval responded that he would

12  inform CARRILLO when V. GARCIA arrived.

13      4.   On or about June 2, 2007, defendant CARRILLO and co-

14  conspirator Sandoval, in a telephone conversation using coded

15  language, discussed Sandoval providing drug proceeds to CARRILLO

16  later that afternoon.

17      5.   On or about June 7, 2007, defendant CARRILLO, in a

18  telephone conversation using coded language, agreed to sell

19  approximately 27 pounds of methamphetamine to co-conspirator

20  Sandoval that would be delivered by defendant TEYTUD.

21      6.   On or about June 7, 2007, defendant CARRILLO, in a

22  telephone conversation using coded language, told co-conspirator

23  Sandoval that defendant TEYTUD was on his way to deliver

24  approximately 22 pounds of methamphetamine to Sandoval.

25      7.   On or about June 7, 2007, defendant V. GARCIA picked up

26  a quantity of methamphetamine from co-conspirator Sandoval for

27  delivery to one or more of Sandoval's drug buyers in the San

28  Francisco Bay area.

8.   On or about June 7, 2007, defendant V. GARCIA, in a telephone conversation using coded language, agreed to meet co-conspirator Sandoval in order to pick up two additional pounds of methamphetamine.

9.   On or about June 7, 2007, defendant V. GARCIA met with co-conspirator Sandoval behind a store in Corona, California, to obtain the two additional pounds of methamphetamine.

10.  On or about June 7, 2007, defendant CARRILLO, in a telephone conversation using coded language, discussed with co-conspirator Sandoval the quality of the methamphetamine that CARRILLO had sent to Sandoval.

11.  On or about June 8, 2007, defendant CARRILLO, in a telephone conversation using coded language, discussed with co-conspirator Sandoval the fact that there had been complaints about the quality of methamphetamine supplied by CARRILLO that was delivered to the San Francisco Bay area by defendant V. GARCIA.

12.  On or about June 11, 2007, defendant CARRILLO and co-conspirator Sandoval, in a telephone conversation using coded language, discussed that Sandoval would send approximately $390,000 in drug proceeds to CARRILLO that afternoon.

13.  On or about July 4, 2007, defendant TEYTUD, in a telephone conversation using coded language, told co-conspirator Sandoval that TEYTUD was on his way to Sandoval's location with a shipment of drugs.

14.  On or about July 4, 2007, defendant CARRILLO, in a telephone conversation using coded language, told co-conspirator

1  Sandoval that defendant TEYTUD was on his way to Sandoval's
2  location with a shipment of 48 pounds of methamphetamine.
3      15.  On or about July 5, 2007, defendant TEYTUD, in a
4  telephone conversation using coded language, agreed to bring to
5  co-conspirator Sandoval a shipment of drugs that would fill
6  TEYTUD's vehicle.
7      16.  On or about July 5, 2007, defendant TEYTUD, in a
8  telephone conversation using coded language, told co-conspirator
9  Sandoval that he was delivering a quantity of drugs that day to
10 Sandoval on behalf of defendant CARRILLO.
11     17.  On or about July 5, 2007, defendant CARRILLO and co-
12 conspirator Sandoval, in a telephone conversation using coded
13 language, discussed Sandoval's dissatisfaction with the quality
14 of methamphetamine that CARRILLO had previously sent to Sandoval.
15     18.  On or about July 5, 2007, defendant V. GARCIA, in a
16 telephone conversation using coded language, told co-conspirator
17 Sandoval that she was on her way to meet with defendant TEYTUD to
18 deliver drug proceeds to TEYTUD on behalf of Sandoval.
19     19.  On or about July 5, 2007, defendant CARRILLO and co-
20 conspirator Sandoval, in a telephone conversation using coded
21 language, discussed the fact that Sandoval would give defendant
22 TEYTUD approximately $600,000 in drug proceeds to deliver to
23 CARRILLO as payment for previous drug shipments.
24     20.  On or about July 6, 2007, defendant TEYTUD possessed
25 approximately $419,825 in drug proceeds given to him by co-
26 conspirator Sandoval to be delivered to defendant CARRILLO.
27     21.  On or about July 6, 2007, defendant CARRILLO, in a
28 telephone conversation using coded language, told co-conspirator

- 11 -

1  Sandoval that defendant TEYTUD had been arrested and that the

2  money Sandoval had given to TEYTUD to be delivered to CARRILLO

3  was in the car TEYTUD was driving when he was arrested.

4      22.  On or about July 6, 2007, co-conspirator Sandoval, in a

5  telephone conversation using coded language, told defendant V.

6  GARCIA to deliver approximately five pounds of methamphetamine to

7  co-conspirator Raya-Ortega.

8      23.  On or about July 7, 2007, co-conspirator Raya-Ortega,

9  in a telephone conversation using coded language, told co-

10 conspirator Sandoval that defendant V. GARCIA had delivered

11 approximately five pounds of methamphetamine to Raya-Ortega.

12     24.  On or about July 11, 2007, co-conspirator Raya-Ortega,

13 in a telephone conversation using coded language, told co-

14 conspirator Sandoval that he would give defendant V. GARCIA drug

15 proceeds that could be delivered to Sandoval as payment for

16 previous drug shipments.

17     25.  On or about July 14, 2007, defendant V. GARCIA, in a

18 telephone conversation using coded language, agreed with an

19 unindicted co-conspirator to deliver a quantity of cocaine to the

20 unindicted co-conspirator the next day.

21     26.  On or about July 14, 2007, co-conspirator Sandoval, in

22 a telephone conversation using coded language, confirmed with an

23 unindicted co-conspirator that defendant V. GARCIA would be

24 delivering a quantity of cocaine and methamphetamine to the

25 unindicted co-conspirator.

26     27.  On or about July 14, 2007, co-conspirator Sandoval, in

27 a telephone conversation using coded language, told co-

28

1  conspirator Raya-Ortega that defendant V. GARCIA would be

2  delivering a quantity of methamphetamine to Raya-Ortega.

3      28.  On or about July 14, 2007, defendant V. GARCIA, in a

4  telephone conversation using coded language, told co-conspirator

5  Raya-Ortega that she would meet him early the next day.

6      29.  On or about July 14, 2007, co-conspirator Raya-Ortega,

7  in a telephone conversation using coded language, agreed to

8  purchase approximately 30 pounds of methamphetamine from co-

9  conspirator Sandoval.

10      30.  On or about July 18, 2007, defendant V. GARCIA, in a

11  telephone conversation using coded language, told co-conspirator

12  Sandoval that she had collected approximately $266,000 in drug

13  proceeds from different customers, but she was still waiting for

14  co-conspirator Raya-Ortega to give her drug proceeds he owed to

15  Sandoval.

16      31.  On or about July 18, 2007, co-conspirator Raya-Ortega,

17  in a telephone conversation using coded language, told co-

18  conspirator Sandoval that he would meet defendant V. GARCIA to

19  give her drug proceeds that V. GARCIA could then deliver to

20  Sandoval.

21      32.  On or about July 18, 2007, defendant V. GARCIA, in a

22  telephone conversation using coded language, told co-conspirator

23  Sandoval that co-conspirator Raya-Ortega had told her that the

24  drug proceeds were almost ready to be picked up.

25      33.  On or about July 19, 2007, defendant V. GARCIA, in a

26  telephone conversation using coded language, told co-conspirator

27  Sandoval that she was driving to Sandoval's location.

28

1     34.  On or about November 13, 2007, defendant APARICIO

2  possessed approximately 12.9 grams of methamphetamine and

3  approximately 248.3 grams of a mixture or substance containing a

4  detectable amount of cocaine as he drove a green GMC Sonoma in

5  Antioch, California.

6     35.  On or about November 13, 2007, defendant APARICIO

7  possessed approximately $115,049 in drug proceeds at his

8  residence in Antioch, California.

9     36.  On or about November 13, 2007, defendant PEREZ

10  possessed approximately 670 grams of a mixture or substance

11  containing a detectable amount of cocaine, approximately 83.1

12  grams of methamphetamine, and approximately 1001 grams of hashish

13  at his residence in Antioch, California.

14     37.  On or about November 17, 2007, co-conspirator Raya-

15  Ortega, in a telephone conversation using coded language, told an

16  unindicted co-conspirator that defendant APARICIO had gotten out

17  of jail and that Raya-Ortega had instructed APARICIO to stop

18  trafficking in drugs for a brief period of time.

19     38.  On or about November 17, 2007, co-conspirator Raya-

20  Ortega, in a telephone conversation using coded language, told an

21  unindicted co-conspirator that defendant PEREZ could not post

22  bail because PEREZ was illegally in the country.

23     39.  On or about February 27, 2009, defendant R. SENDIS, in

24  a telephone conversation using coded language, agreed to sell one

25  ounce of methamphetamine to a confidential informant ("CI")

26  posing as a methamphetamine buyer and an undercover law

27  enforcement agent posing as a methamphetamine buyer ("the

28  undercover agent").

1     40.   On or about February 27, 2009, defendant MADERA, acting

2  on behalf of defendant R. SENDIS, delivered approximately 24.2

3  grams of methamphetamine to the CI and the undercover agent in

4  the parking lot of a Target store in Norwalk, California.

5     41.   On or about March 5, 2009, defendant R. SENDIS, in a

6  telephone conversation using coded language, agreed to speak

7  directly to the undercover agent in order to discuss the sale of

8  methamphetamine.

9     42.   On or about March 6, 2009, defendant R. SENDIS, in a

10  telephone conversation using coded language, agreed to sell two

11  ounces of methamphetamine to the undercover agent.

12     43.   On or about March 9, 2009, defendant R. SENDIS, in a

13  telephone conversation using coded language, agreed to sell two

14  ounces of methamphetamine to the undercover agent.

15     44.   On or about March 10, 2009, defendant R. SENDIS, in a

16  telephone conversation using coded language, discussed where he

17  would meet the undercover agent to sell him two ounces of

18  methamphetamine.

19     45.   On or about March 10, 2009, defendant MADERA, acting on

20  behalf of defendant R. SENDIS, delivered approximately 26.8 grams

21  of methamphetamine to the undercover agent in the parking lot of

22  a Target store in Norwalk, California.

23     46.   On or about March 13, 2009, defendant R. SENDIS, in a

24  telephone conversation using coded language, agreed to meet with

25  the undercover agent to discuss additional sales of

26  methamphetamine.

27

28

1    47.  On or about March 17, 2009, defendant R. SENDIS, in a
2  telephone conversation using coded language, agreed to sell two
3  ounces of methamphetamine to the undercover agent.

4    48.  On or about April 13, 2009, defendant R. SENDIS, in a
5  telephone conversation using coded language, agreed to sell one
6  quarter pound of methamphetamine to the undercover agent.

7    49.  On or about April 17, 2009, defendant ZAVALA, acting on
8  behalf of defendant R. SENDIS, delivered approximately 108.1
9  grams of methamphetamine to the undercover agent in the parking
10  lot of a Target store in Norwalk, California.

11    50.  On or about May 15, 2009, defendants R. SENDIS and
12  CLEGG, in a telephone conversation using coded language,
13  discussed the price of various amounts of methamphetamine that
14  CLEGG was interested in purchasing from R. SENDIS, and R. SENDIS
15  offered to sell CLEGG one pound of methamphetamine for $15,700.

16    51.  On or about May 15, 2009, defendants R. SENDIS and
17  MADERA, in a telephone conversation using coded language,
18  discussed the fact that they owed their methamphetamine supplier
19  $19,400 and that they needed to obtain more methamphetamine for
20  their drug customers.  In the same conversation, MADERA told R.
21  SENDIS that he still had approximately one and one-half pounds of
22  methamphetamine available to sell.

23    52.  On or about May 15, 2009, defendant CROZIER, in a
24  telephone conversation using coded language, told defendant R.
25  SENDIS that some of CROZIER's drug customers were not satisfied
26  with the quality of the methamphetamine that CROZIER had received
27  from R. SENDIS.

28

- 16 -

1       53.   On or about May 15, 2009, defendant MEREDITH, in a

2   telephone conversation using coded language, ordered one and one-

3   half ounces of methamphetamine from defendant R. SENDIS.

4       54.   On or about May 16, 2009, defendant R. SENDIS, in a

5   telephone conversation using coded language, discussed with an

6   unindicted co-conspirator someone who owed R. SENDIS $30,000 in

7   drug proceeds.

8       55.   On or about May 17, 2009, defendant OLIVER, in a

9   telephone conversation using coded language, informed defendant

10  R. SENDIS that OLIVER's drug customers were satisfied with the

11  methamphetamine that OLIVER purchased from R. SENDIS.

12      56.   On or about May 17, 2009, defendant OLIVER, in a

13  telephone conversation using coded language, told defendant R.

14  SENDIS that OLIVER may want to purchase an additional four ounces

15  of methamphetamine from R. SENDIS.

16      57.   On or about May 18, 2009, defendant KEESEY, in a

17  telephone conversation using coded language, told defendant R.

18  SENDIS that he still had some methamphetamine left over from a

19  prior drug purchase from R. SENDIS.

20      58.   On or about May 18, 2009, defendant KEESEY, in a

21  telephone conversation using coded language, complained to

22  defendant R. SENDIS that the quality of the methamphetamine that

23  KEESEY had previously bought from R. SENDIS was not high, but

24  KEESEY agreed to purchase more methamphetamine from R. SENDIS in

25  the hope that the quality would be better.

26      59.   On or about May 19, 2009, defendant MEREDITH, in a

27  telephone conversation using coded language, told defendant R.

28  SENDIS that his customers were complaining about the quality of

the methamphetamine that MEREDITH had previously purchased from R. SENDIS.  In response to MEREDITH's complaint, R. SENDIS told MEREDITH that he now had methamphetamine that was of higher quality.

60.  On or about May 19, 2009, defendant MADERA, in a telephone conversation using coded language, told defendant R. SENDIS that he had recently obtained high-quality methamphetamine and was going to add some "cut," a dilutant, to the high-quality methamphetamine, and R. SENDIS told MADERA to give methamphetamine to defendant RIVAS.

61.  On or about May 20, 2009, defendant DIAZ, in a series of telephone conversations using coded language, informed defendant R. SENDIS that he was in his silver car at a Northgate grocery store in Pico Rivera, California, waiting to meet with R. SENDIS's drug courier.

62.  On or about May 20, 2009, defendant R. SENDIS, in a telephone conversation using coded language, told defendant MADERA to have ready one-half ounce of methamphetamine.

63.  On or about May 20, 2009, defendant ZAVALA, in a telephone conversation using coded language, spoke to defendant R. SENDIS and agreed to meet with defendant DIAZ to deliver one-half ounce of methamphetamine on behalf of R. SENDIS.

64.  On or about May 20, 2009, defendant ZAVALA drove from the residence of defendant MADERA in Downey, California, to the parking lot of a Northgate grocery store in Pico Rivera, California, to deliver one-half ounce of methamphetamine to defendant DIAZ.

1    65.   On or about May 21, 2009, defendant R. SENDIS, in a

2  telephone conversation using coded language, told defendant RIVAS

3  to deliver all the drug proceeds he had to defendant S. SENDIS,

4  and RIVAS told R. SENDIS that he had six to seven ounces of

5  methamphetamine with him.

6    66.   On or about May 21, 2009, defendant SANCHEZ, in a

7  telephone conversation using coded language, discussed poor-

8  quality methamphetamine he had received from defendant R. SENDIS,

9  and R. SENDIS agreed to have defendant ZAVALA deliver

10  approximately three ounces of methamphetamine to SANCHEZ.  In the

11  same conversation, SANCHEZ told R. SENDIS that he would provide

12  R. SENDIS with drug proceeds by the time R. SENDIS returned from

13  vacation.

14    67.   On or about May 21, 2009, defendants R. SENDIS and

15  MADERA, in a telephone conversation using coded language,

16  discussed distributing high-quality methamphetamine.

17    68.   On or about May 21, 2009, defendant KEESEY, in a

18  telephone conversation using coded language, told defendant R.

19  SENDIS that the "the chunks were good," meaning the quality of

20  the methamphetamine that KEESEY had received from R. SENDIS was

21  high.

22    69.   On or about May 21, 2009, defendants R. SENDIS and

23  MADERA, in a telephone conversation using coded language,

24  discussed sending drug proceeds to defendant VALDEZ and how much

25  money other co-conspirators, including defendants RIVAS and

26  HERMOSILLO, owed them for drugs; and R. SENDIS said he had given

27  defendant S. SENDIS approximately one ounce of methamphetamine

28  and had also given drugs to defendant OLIVER.

- 19 -

1    70.   On or about May 22, 2009, defendant A. SENDIS, in a
2    telephone conversation using coded language, asked defendant
3    KEESEY how many ounces of methamphetamine he wanted to purchase.
4    71.   On or about May 22, 2009, defendant A. SENDIS, in a
5    telephone conversation using coded language, asked defendant
6    MADERA if he had two ounces of methamphetamine available to
7    deliver to defendant KEESEY.
8    72.   On or about May 22, 2009, defendant A. SENDIS, in a
9    telephone conversation using coded language, discussed with
10   defendant KEESEY delivering two ounces of methamphetamine,
11   referred to as "two 28s," to KEESEY.
12   73.   On or about May 22, 2009, defendant A. SENDIS, in a
13   telephone conversation using coded language, discussed with
14   defendant ZAVALA delivering methamphetamine to defendant KEESEY.
15   74.   On or about May 22, 2009, defendant A. SENDIS, in a
16   telephone conversation using coded language, told an unindicted
17   co-conspirator that she was taking orders for methamphetamine
18   while defendant R. SENDIS was out of town.
19   75.   On or about May 22, 2009, defendant MADERA, in a
20   telephone conversation using coded language, told defendant
21   MEREDITH that MADERA was defendant R. SENDIS's drug courier and
22   that R. SENDIS had left MADERA working while R. SENDIS was on
23   vacation.  MADERA then agreed to deliver approximately one-half
24   ounce of methamphetamine to MEREDITH.
25   76.   On or about May 23, 2009, defendant OLIVER, in a
26   telephone conversation using coded language, ordered four ounces
27   of methamphetamine from defendant MADERA.
28

- 20 -

77.   On or about May 24, 2009, defendant CROZIER, in a telephone conversation using coded language, agreed to meet defendant R. SENDIS at a Northgate grocery store in Pico Rivera, California, in order to obtain one ounce of methamphetamine.

78.   On or about May 24, 2009, defendant CROZIER, in a telephone conversation using coded language, told defendant R. SENDIS that the methamphetamine CROZIER had purchased earlier that day from R. SENDIS was not the full ounce that CROZIER had agreed to purchase from R. SENDIS.

79.   On or about May 24, 2009, defendant RIVAS, in a telephone conversation using coded language, told defendant R. SENDIS that he had six ounces of methamphetamine left, and that three or four of the ounces of methamphetamine appeared to be of good quality; and R. SENDIS asked RIVAS to send him two of the remaining ounces of methamphetamine that RIVAS had left.

80.   On or about May 25, 2009, defendant KEESEY, in a telephone conversation using coded language, discussed with defendant R. SENDIS how much money KEESEY owed for methamphetamine that R. SENDIS had previously supplied him.  In the same telephone conversation, KEESEY ordered three ounces of methamphetamine from R. SENDIS.

81.   On or about May 25, 2009, defendant R. SENDIS, in a telephone conversation using coded language, told defendant MAGANA to deliver methamphetamine to defendant KEESEY in Anaheim, California, because R. SENDIS would not deliver the methamphetamine himself since R. SENDIS did not want to risk being caught with the methamphetamine.

1       82.  On or about May 25, 2009, defendant MAGANA, in a

2   telephone conversation using coded language, agreed to deliver

3   methamphetamine to defendant KEESEY on behalf of defendant R.

4   SENDIS, and R. SENDIS gave MAGANA directions to KEESEY's

5   location.

6       83.  On or about May 25, 2009, defendant MAGANA, in a

7   telephone conversation using coded language, agreed to collect

8   drug proceeds on behalf of defendant R. SENDIS.

9       84.  On or about May 25, 2009, defendant KEESEY, in a series

10  of telephone conversations using coded language, agreed with

11  defendant R. SENDIS to get the methamphetamine KEESEY had

12  purchased from R. SENDIS by going into R. SENDIS's car and

13  retrieving the methamphetamine from under the passenger's seat,

14  where it was hidden.

15      85.  On or about May 26, 2009, defendant MEREDITH, in a

16  telephone conversation using coded language, ordered one ounce of

17  methamphetamine from defendant R. SENDIS.

18      86.  On or about May 26, 2009, defendant MEREDITH, in a

19  telephone conversation using coded language, discussed with

20  defendant R. SENDIS a prior methamphetamine transaction in which

21  R. SENDIS's drug courier brought only one-half ounce of

22  methamphetamine when MEREDITH had ordered a full ounce.

23      87.  On or about May 26, 2009, defendant OLIVER, in a

24  telephone conversation using coded language, ordered four ounces

25  of methamphetamine from defendant R. SENDIS and told R. SENDIS,

26  "Give me the good stuff because I've got work to do."

27      88.  On or about May 26, 2009, defendant HERMOSILLO, in a

28  telephone conversation using coded language, ordered a "whole

- 22 -

1  one," meaning one ounce of methamphetamine, from defendant R.

2  SENDIS.   In the same conversation, R. SENDIS said that he only

3  had one-half ounce of methamphetamine for HERMOSILLO and that his

4  drug courier was on his way to make the delivery.

5       89.  On or about May 26, 2009, defendant HERMOSILLO, in a

6  text message using coded language, informed defendant R. SENDIS

7  that the methamphetamine he had just purchased from R. SENDIS was

8  of poor quality and that HERMOSILLO's drug customers would not

9  buy the methamphetamine.

10       90.  On or about May 27, 2009, defendants R. SENDIS and

11  ZAVALA, in a telephone conversation using coded language,

12  discussed possible undercover law enforcement officers driving in

13  the area and being careful to ensure that officers did not follow

14  them to or from the location where their drugs were stored.

15       91.  On or about May 27, 2009, defendant OLIVER, in a

16  telephone conversation using coded language, informed defendant

17  R. SENDIS that his most recent purchase of methamphetamine from

18  R. SENDIS was not of the same high quality as prior drug

19  purchases and that OLIVER would have to wait for word from his

20  drug customers to see whether they complained about the quality

21  of the methamphetamine.

22       92.  On or about May 27, 2009, defendant CLEGG, in a

23  telephone conversation using coded language, told defendant R.

24  SENDIS that he was getting a new telephone number because things

25  had gotten "hot" on CLEGG's prior telephone, meaning law

26  enforcement became aware of his use of the prior telephone for

27  drug trafficking activities.

28

- 23 -

1    93.   On or about May 27, 2009, defendant CLEGG, in a
2    telephone conversation using coded language, ordered four ounces
3    of methamphetamine from defendant R. SENDIS.

4    94.   On or about May 29, 2009, defendant KEESEY, in a
5    telephone conversation using coded language, complained to
6    defendant R. SENDIS about the price KEESEY was paying R. SENDIS
7    for methamphetamine and that KEESEY's profit margin was low.

8    95.   On or about May 29, 2009, defendant R. SENDIS, in a
9    telephone conversation using coded language, discussed with
10   defendant MADERA finding two individuals who had robbed
11   methamphetamine from MADERA at gunpoint, and MADERA said he would
12   still owe money for the drugs to defendant VALDEZ.

13   96.   On or about May 29, 2009, defendant R. SENDIS, in a
14   telephone conversation using coded language, told defendant
15   ZAVALA to take one ounce of methamphetamine to defendant
16   MEREDITH.

17   97.   On or about May 29, 2009, defendants R. SENDIS and
18   VALDEZ, in a telephone conversation using coded language,
19   discussed the fact that defendant MADERA wanted to obtain a gun
20   to kill the person who stole a pound of methamphetamine from him,
21   and VALDEZ said that MADERA was at fault for doing a drug deal
22   with people he did not know.

23   98.   On or about May 29, 2009, defendant SANCHEZ, in a
24   telephone conversation using coded language, ordered three ounces
25   of methamphetamine from defendant R. SENDIS, and SANCHEZ said he
26   had already paid R. SENDIS for two ounces of methamphetamine.

27   99.   On or about May 30, 2009, defendant GAETA, in telephone
28   conversations using coded language, inquired of defendant R.

1 SENDIS about the prices of different quantities of

2 methamphetamine.

3       100. On or about May 30, 2009, defendant R. SENDIS, in

4 telephone conversations using coded language, told defendant

5 GAETA that the methamphetamine R. SENDIS had available for

6 purchase was "pure rock," meaning very high quality; and GAETA

7 ordered four ounces of methamphetamine from R. SENDIS for $4,200

8 and asked R. SENDIS to deliver the methamphetamine as soon as

9 possible.  R. SENDIS said he would have defendant RIVAS deliver

10 the methamphetamine to GAETA.

11      101. On or about May 30, 2009, defendant R. SENDIS, in a

12 telephone conversation using coded language, told defendant

13 KEESEY that defendant RIVAS was on his way with the

14 methamphetamine and provided KEESEY with RIVAS's telephone

15 number.  In the same conversation, KEESEY asked R. SENDIS if his

16 courier was bringing four or three ounces of methamphetamine.

17      102. On or about May 30, 2009, defendant RIVAS, in a

18 telephone conversation using coded language, discussed with

19 defendant R. SENDIS driving to defendant KEESEY's location.

20      103. On or about May 30, 2009, defendant DIAZ, in a

21 telephone conversation using coded language, told defendant R.

22 SENDIS that the methamphetamine that DIAZ had purchased from R.

23 SENDIS looked like "fingers" and was "beautiful," meaning it was

24 of high quality.

25      104. On or about May 30, 2009, defendant DIAZ, in a

26 telephone conversation using coded language, ordered a "whole

27 one" from defendant R. SENDIS, meaning one ounce of

28 methamphetamine.

105. On or about June 1, 2009, defendant CROZIER, in a telephone conversation using coded language, ordered one ounce of methamphetamine from defendant R. SENDIS and agreed to meet at a golf course to obtain the drugs.

106. On or about June 1, 2009, defendant CLEGG, in a telephone conversation using coded language, told defendant R. SENDIS that the methamphetamine that CLEGG had received from R. SENDIS was only three ounces instead of the four ounces that CLEGG had ordered.  In the same telephone conversation, CLEGG told R. SENDIS that his drug customers were not satisfied with the quality of methamphetamine that CLEGG had purchased from R. SENDIS.

107. On or about June 1, 2009, defendant SANCHEZ, in a text message using coded language, asked defendant R. SENDIS if the methamphetamine that R. SENDIS had available for sale had "wings," meaning it was strong and high in quality.

108. On or about June 2, 2009, defendant GAETA, in a telephone conversation using coded language, ordered one ounce of methamphetamine from defendant R. SENDIS, and R. SENDIS said that GAETA would like the quality of the methamphetamine.

109. On or about June 5, 2009, defendant HERMOSILLO, in a telephone conversation using coded language, ordered one ounce of methamphetamine from defendant R. SENDIS.

110. On or about June 6, 2009, defendant GAETA, in a telephone conversation using coded language, inquired of defendant R. SENDIS as to the price of methamphetamine, and GAETA told R. SENDIS that when his drug customer had enough money to

1 purchase four ounces of methamphetamine, GAETA would purchase the

2 four ounces of methamphetamine from R. SENDIS.

3     111. On or about June 8, 2009, defendant SANCHEZ, in a text

4 message using coded language, told defendant R. SENDIS that

5 SANCHEZ was going to give to defendant ZAVALA money that SANCHEZ

6 owed to R. SENDIS for one ounce of methamphetamine, and that

7 SANCHEZ would still owe R. SENDIS money for two additional ounces

8 of methamphetamine.

9     112. On or about June 8, 2009, defendant OLIVER, in a

10 telephone conversation using coded language, ordered one-half

11 pound of methamphetamine from defendant R. SENDIS for a price of

12 $8,100.  During the same conversation, OLIVER asked R. SENDIS if

13 the quality of the methamphetamine was high, and R. SENDIS said

14 that it was.

15     113. On or about June 10, 2009, defendant R. SENDIS, in a

16 telephone conversation using coded language, told defendant

17 MADERA to give one ounce of methamphetamine to defendant CROZIER,

18 and to give four ounces of methamphetamine to defendant ORTIZ

19 that were to be delivered to defendant GAETA.

20     114. On or about June 10, 2009, defendant ORTIZ departed the

21 residence of defendant MADERA in Downey, California, and

22 delivered methamphetamine to defendant CROZIER in a parking lot

23 in Downey, California.

24     115. On or about June 10, 2009, defendant GAETA, in a

25 telephone conversation using coded language, agreed to meet

26 defendant R. SENDIS's drug courier at a Northgate grocery store

27 in Pico Rivera, California, to purchase four ounces of

28 methamphetamine from R. SENDIS.

116. On or about June 10, 2009, defendant GAETA received approximately 110.3 grams of methamphetamine from defendant ORTIZ in the parking lot of a Northgate grocery store in Pico Rivera, California.

117. On or about June 18, 2009, defendant ORTIZ, in a telephone conversation using coded language, gave directions to defendant R. SENDIS regarding how to get to a "stash house" location that ORTIZ was using to store methamphetamine.

118. On or about June 18, 2009, defendant S. SENDIS, in a telephone conversation using coded language, told an unindicted co-conspirator that S. SENDIS had "a whole one" of methamphetamine and wanted a scale to weigh it.

119. On or about June 18, 2009, defendant OMAR, in a telephone conversation using coded language, complained to defendant VALDEZ that one of their methamphetamine sources provided "wet" methamphetamine, which was of poor quality and took six days to dry before it could be distributed.

120. On or about June 18, 2009, defendant VALDEZ, in a telephone conversation using coded language, discussed with defendant OMAR the price per pound of methamphetamine that they were obtaining.

121. On or about June 18, 2009, defendant CLAUDIA, in a telephone conversation using coded language, complained to defendant VALDEZ about one of their methamphetamine sources, who CLAUDIA said was "shorting" her on the amount of methamphetamine she was obtaining from the drug source; and CLAUDIA said that she had noticed the shortage on a prior occasion when she bought 15 pounds of methamphetamine from the drug source.

122. On or about June 19, 2009, defendant VALDEZ, in a telephone conversation using coded language, asked defendant CLAUDIA to look into obtaining pseudoephedrine pills in order to make methamphetamine.

123. On or about June 19, 2009, defendant OMAR, in a telephone conversation using coded language, asked defendant VALDEZ if OMAR was supposed to have received nine bundles of drug proceeds, and VALDEZ told OMAR that the total amount of drug proceeds OMAR received should amount to $222,600.

124. On or about June 19, 2009, defendant VALDEZ, in a telephone conversation using coded language, discussed with defendant OMAR having OMAR send to VALDEZ ten pounds of methamphetamine, and the two discussed the quality of the methamphetamine that would be delivered to VALDEZ.

125. On or about June 19, 2009, defendant VALDEZ, in a telephone conversation using coded language, complained to defendant CLAUDIA that a methamphetamine source would not lower the price per pound of methamphetamine below $9,900, and VALDEZ and CLAUDIA discussed their methamphetamine source.

126. On or about June 19, 2009, defendant SANCHEZ, in a telephone conversation using coded language, ordered one ounce of methamphetamine from defendant R. SENDIS.

127. On or about June 19, 2009, defendant R. SENDIS, in a telephone conversation using coded language, gave defendant ORTIZ directions to meet defendant SANCHEZ to deliver one ounce of methamphetamine to SANCHEZ.

128. On or about June 19, 2009, defendant ORTIZ delivered, on behalf of defendant R. SENDIS, approximately one ounce of

1  methamphetamine to defendant SANCHEZ in the parking lot of a

2  Jack-in-the-Box restaurant in Whittier, California.

3      129. On or about June 19, 2009, defendant SANCHEZ, in a

4  telephone conversation using coded language, told defendant R.

5  SENDIS that he was stopped by the police, but that he hid the

6  methamphetamine he had and followed defendant S. SENDIS's advice

7  and refused to allow the police to search his car.

8      130. On or about June 19, 2009, defendant RIVAS, in a

9  telephone conversation using coded language, ordered two ounces

10 of methamphetamine from defendant R. SENDIS.

11     131. On or about June 19, 2009, defendant ORTIZ went to a

12 "stash house" in Santa Fe Springs, California, obtained two

13 ounces of methamphetamine, and then drove to defendant RIVAS's

14 residence in Whittier, California, where ORTIZ provided the

15 methamphetamine to RIVAS.

16     132. On or about June 19, 2009, defendant ORTIZ, in a

17 telephone conversation using coded language, told defendant R.

18 SENDIS that he had delivered two ounces of methamphetamine to

19 defendant RIVAS and that RIVAS had only paid for one of the two

20 ounces of methamphetamine.

21     133. On or about June 19, 2009, defendant R. SENDIS, in a

22 telephone conversation using coded language, directed defendant

23 ORTIZ to deliver methamphetamine to defendant CROZIER at a car

24 wash in Pico Rivera, California, and R. SENDIS said that CROZIER

25 would weigh the methamphetamine.

26     134. On or about June 19, 2009, defendant ORTIZ picked up

27 methamphetamine from a "stash house" in Santa Fe Springs,

28 California, and drove to the car wash in Pico Rivera, California,

1    where ORTIZ was scheduled to meet defendant CROZIER in order to

2    deliver the methamphetamine.

3         135. On or about June 19, 2009, defendant ORTIZ, in a

4    telephone conversation using coded language, told defendant R.

5    SENDIS that he had delivered the methamphetamine to defendant

6    CROZIER, and R. SENDIS told ORTIZ to bring him $1,000 in drug

7    proceeds.

8         136. On or about June 20, 2009, defendant VALDEZ, in a

9    telephone conversation using coded language, directed defendant

10   GUTIERREZ to take eight ounces of methamphetamine to an

11   unidentified co-conspirator.

12        137. On or about June 20, 2009, defendant VALDEZ, in a

13   telephone conversation using coded language, told defendant

14   ARACELI to bring him $2,000 from "the box," and ARACELI agreed to

15   do so.

16        138. On or about June 23, 2009, defendant ARACELI, in a

17   telephone conversation using coded language, agreed to provide

18   defendant VALDEZ with four units of a controlled substance, and

19   ARACELI told VALDEZ that defendant GUTIERREZ had returned.

20        139. On or about June 23, 2009, defendant VALDEZ, in a

21   telephone conversation using coded language, told defendant

22   CLAUDIA that VALDEZ had been offered methamphetamine for $13,000

23   per pound.

24        140. On or about June 24, 2009, defendant VALDEZ, in a

25   telephone conversation using coded language, told an unidentified

26   female co-conspirator that defendant GUTIERREZ would be picking

27   up methamphetamine from her on VALDEZ's behalf.

28

1    141. On or about June 24, 2009, defendant VALDEZ, in a
2  telephone conversation using coded language, told defendant
3  GUTIERREZ to pick up four pounds of methamphetamine from an
4  unidentified female co-conspirator, and GUTIERREZ agreed to do
5  so.
6    142. On or about June 24, 2009, defendant GUTIERREZ gave a
7  black Honda Civic to defendant SOTO, and SOTO then drove the
8  black Honda Civic to a residence in Bell Gardens, California.
9    143. On or about June 24, 2009, defendants VALDEZ,
10 GUTIERREZ, and SOTO possessed approximately 1,691 grams of
11 methamphetamine inside a black Honda Civic that GUTIERREZ had
12 given to SOTO.
13   144. On or about June 24, 2009, defendant SANCHEZ, in a text
14 message using coded language, told defendant R. SENDIS that he
15 still had three ounces of methamphetamine left.
16   145. On or about June 24, 2009, defendant HERMOSILLO, in a
17 telephone conversation using coded language, ordered from
18 defendant R. SENDIS a "house with all chunks," meaning
19 methamphetamine in a form that had not been mixed with a "cut" or
20 dilutant.
21   146. On or about June 25, 2009, defendant VALDEZ, in a
22 telephone conversation using coded language, told defendant OMAR
23 that he needed more methamphetamine, that he had been offered
24 methamphetamine for $13,500 a pound, and that he was in
25 possession of four pounds of methamphetamine that were of poor
26 quality; and OMAR said he would be sending methamphetamine to
27 VALDEZ.
28

1   147. On or about June 25, 2009, defendant DIAZ, in a
2   telephone conversation using coded language, informed defendant
3   R. SENDIS that the methamphetamine he received from R. SENDIS was
4   "beautiful," meaning it was high quality.

5   148. On or about June 25, 2009, defendant DIAZ, in a
6   telephone conversation using coded language, agreed to pay
7   defendant R. SENDIS for methamphetamine that DIAZ had previously
8   received, and R. SENDIS agreed to sell DIAZ a "whole one,"
9   meaning one ounce of methamphetamine.

10   149. On or about June 25, 2009, defendant CLEGG, in a
11   telephone conversation using coded language, told defendant R.
12   SENDIS that he had $4,000 to pay R. SENDIS, in part for
13   methamphetamine that CLEGG had previously purchased and in part
14   for more methamphetamine CLEGG wanted to purchase from R. SENDIS.

15   150. On or about June 25, 2009, defendant CLEGG, in a
16   telephone conversation using coded language, ordered three ounces
17   of methamphetamine from defendant R. SENDIS.

18   151. On or about July 3, 2009, defendant HERMOSILLO, in a
19   telephone conversation using coded language, ordered one-quarter
20   pound of methamphetamine from defendant ORTIZ, who was taking
21   drug orders for defendant R. SENDIS while R. SENDIS was on
22   vacation.

23   152. On or about July 15, 2009, defendant DIAZ, in a
24   telephone conversation using coded language, informed defendant
25   R. SENDIS that DIAZ had received methamphetamine from R. SENDIS,
26   and that while the methamphetamine was different than the
27   methamphetamine DIAZ had previously received from R. SENDIS, it
28   was still of good quality.

- 33 -

1    153. On or about August 7, 2009, defendant S. SENDIS, in a
2    telephone conversation using coded language, agreed with
3    defendant ZAVALA to bring four ounces of methamphetamine to
4    ZAVALA's location.

5    154. On or about August 7, 2009, defendant ZAVALA, in a
6    telephone conversation using coded language, told defendant S.
7    SENDIS that defendant SANCHEZ wanted a quantity of
8    methamphetamine.

9    155. On or about August 8, 2009, defendant HERNANDEZ JR., in
10    a telephone conversation using coded language, told defendant A.
11    HERNANDEZ to tell defendant HERNANDEZ SR. to give A. HERNANDEZ
12    drug proceeds so that she could give them to HERNANDEZ JR.

13    156. On or about August 8, 2009, defendant HERNANDEZ JR., in
14    a telephone conversation using coded language, told defendant
15    HERNANDEZ SR. to give defendant A. HERNANDEZ drug proceeds so
16    that she could give them to HERNANDEZ JR.

17    157. On or about August 10, 2009, defendant ROBLEDO, in a
18    telephone conversation using coded language, agreed to meet with
19    defendant HERNANDEZ JR. in order to provide HERNANDEZ JR. with
20    drug proceeds on behalf of defendant FELIX.

21    158. On or about August 10, 2009, defendant HERNANDEZ JR.,
22    in a telephone conversation using coded language, told defendant
23    COVARRUBIAS that defendant ROBLEDO was going to meet with
24    HERNANDEZ JR. to provide HERNANDEZ JR. with drug proceeds.

25    159. On or about August 10, 2009, defendant HERNANDEZ JR.,
26    in a telephone conversation using coded language, discussed
27    meeting with defendant ROBLEDO to pick up drug proceeds.

28