1   160. On or about August 13, 2009, defendant ROMAN, in a
2   telephone conversation using coded language, discussed with an
3   unindicted co-conspirator the quality and prices of
4   methamphetamine and discarding telephones.

5   161. On or about August 14, 2009, defendant ROMAN, in a
6   telephone conversation using coded language, discussed with an
7   unindicted co-conspirator providing methamphetamine to another
8   unindicted co-conspirator and picking up drug proceeds.

9   162. On or about August 14, 2009, defendant ROMAN, in a
10  telephone conversation using coded language, told an unindicted
11  co-conspirator that he did not "short" another unindicted co-
12  conspirator when he sold him two ounces of methamphetamine.

13  163. On or about August 16, 2009, defendant HERNANDEZ JR.,
14  in a telephone conversation using coded language, told an
15  unindicted co-conspirator that he had obtained methamphetamine
16  the previous day and that HERNANDEZ JR. had to break down the
17  methamphetamine.

18  164. On or about August 16, 2009, defendant HERNANDEZ JR.,
19  in a telephone conversation using coded language, discussed with
20  an unindicted co-conspirator having firearms, including an
21  assault rifle.

22  165. On or about August 19, 2009, defendant FELIX, in a
23  telephone conversation using coded language, told defendant
24  HERNANDEZ JR. to make a delivery of methamphetamine.

25  166. On or about August 19, 2009, defendant COVARRUBIAS, in
26  a telephone conversation using coded language, told defendant
27  HERNANDEZ JR. to make two deliveries of methamphetamine, one for
28  eleven pounds and one for ten pounds.

- 35 -

1    167. On or about August 19, 2009, defendant FELIX, in a
2    telephone conversation using coded language, gave defendant
3    HERNANDEZ JR. the telephone number of defendant ARACELI, and
4    FELIX told HERNANDEZ JR. to call that telephone number with
5    regard to the methamphetamine delivery and to say he was calling
6    on behalf of defendant CLAUDIA.

7    168. On or about August 19, 2009, defendant HERNANDEZ JR.,
8    in a telephone conversation using coded language, told defendant
9    ARACELI that he was on his way to deliver methamphetamine to her
10   on behalf of defendant CLAUDIA, and ARACELI gave HERNANDEZ JR.
11   directions to a location where the methamphetamine transaction
12   would take place.

13   169. On or about August 19, 2009, defendant ARACELI, in a
14   telephone conversation using coded language, told defendant
15   HERNANDEZ JR. that she would pass on his number to defendant
16   GUTIERREZ, who would receive the shipment of methamphetamine from
17   HERNANDEZ JR.

18   170. On or about August 19, 2009, defendant HERNANDEZ JR.,
19   in a series of telephone conversations using coded language,
20   discussed with defendant GUTIERREZ where they could meet to
21   conduct the methamphetamine transaction that had been arranged by
22   defendant ARACELI.

23   171. On or about August 19, 2009, defendants GUTIERREZ and
24   HERNANDEZ JR. met with each other and jointly went to a "stash
25   house" in Paramount, California, in order to conduct a drug
26   transaction for approximately ten pounds of methamphetamine.

27   172. On or about August 19, 2009, defendants GUTIERREZ,
28   ARACELI, and ALVARADO received approximately ten pounds of

1  methamphetamine, that is, approximately 4,358 grams of

2  methamphetamine, from defendants FELIX, CLAUDIA, HERNANDEZ JR.,

3  and COVARRUBIAS.

4       173. On or about August 19, 2009, defendant HERNANDEZ JR.,

5  in a telephone conversation using coded language, informed

6  defendant COVARRUBIAS that the ten-pound methamphetamine

7  transaction had been completed, and HERNANDEZ JR. said it had

8  been difficult to take the methamphetamine out of the hidden

9  compartment in which the methamphetamine had been stored.

10      174. On or about August 20, 2009, defendant FELIX, in a

11  telephone conversation using coded language, directed defendant

12  HERNANDEZ JR. to get rid of his telephone because law enforcement

13  had seized the ten pounds of methamphetamine that HERNANDEZ JR.

14  had delivered the day before.

15      175. On or about August 21, 2009, defendant CLEGG possessed

16  with intent to distribute approximately one ounce of

17  methamphetamine in La Habra, California.

18      176. On or about August 23, 2009, defendant HERNANDEZ JR.,

19  in a telephone conversation using coded language, told defendant

20  A. HERNANDEZ to deliver drug proceeds to him, and HERNANDEZ JR.

21  told A. HERNANDEZ that he would give her money tomorrow.

22      177. On or about August 24, 2009, defendant ORTIZ, in a

23  telephone conversation using coded language, told defendant S.

24  SENDIS that ORTIZ had given drug proceeds to defendant R. SENDIS

25  the day before, and ORTIZ asked S. SENDIS to provide him with

26  eight ounces of methamphetamine.

27

28

178. On or about August 24, 2009, defendant ORTIZ went to defendant S. SENDIS's house in Whittier, California, and picked up one-half pound of methamphetamine from S. SENDIS.

179. On or about August 24, 2009, in a telephone conversation using coded language, defendant S. SENDIS told defendant ORTIZ to watch out for police cars that may be following him.

180. On or about August 24, 2009, defendants S. SENDIS and ORTIZ possessed approximately 197.8 grams of methamphetamine inside a gray truck.

181. On or about August 25, 2009, defendant S. SENDIS, in a telephone conversation using coded language, told defendant HERMOSILLO that defendant ORTIZ had been arrested by the police the day before.

182. On or about August 25, 2009, defendant HERMOSILLO, in a telephone conversation using coded language, negotiated the purchase of methamphetamine from defendant S. SENDIS in exchange for cash and electronic equipment.

183. On or about September 1, 2009, defendant NEL, in a telephone conversation using coded language, discussed with defendant ROMAN an unindicted co-conspirator who owed approximately $70,000 in drug proceeds, and the two discussed taking the unindicted co-conspirator's car.  In the same telephone conversation, NEL and ROMAN discussed providing ROMAN with drugs to sell.

184. On or about September 2, 2009, defendant A. HERNANDEZ, in a telephone conversation using coded language, asked defendant HERNANDEZ JR. if he had any drugs or drug proceeds at the house

1    or inside the cars, and A. HERNANDEZ warned HERNANDEZ JR. that

2    there were undercover drug officers, "narcos," outside the house

3    and described for HERNANDEZ JR. the cars being used by the

4    undercover officers.

5         185. On or about September 4, 2009, defendant A. HERNANDEZ,

6    in a telephone conversation using coded language, warned

7    defendant HERNANDEZ JR. that there were undercover drug officers

8    in the area, and A. HERNANDEZ told HERNANDEZ JR. to flee the

9    area.

10        186. On or about September 17, 2009, defendant HERNANDEZ

11   JR., in a telephone conversation using coded language, told

12   defendant MEDINA that HERNANDEZ JR. had methamphetamine available

13   for purchase but the quality was not high and that he expected

14   higher quality methamphetamine to arrive soon, and MEDINA told

15   HERNANDEZ JR. that he would wait for the high quality

16   methamphetamine to arrive.

17        187. On or about September 22, 2009, defendant HERNANDEZ

18   JR., in a telephone conversation using coded language, told

19   defendant COVARRUBIAS that HERNANDEZ JR. would bring COVARRUBIAS

20   drug proceeds as soon as HERNANDEZ JR. was told to do so by

21   defendant FELIX, and COVARRUBIAS said a methamphetamine shipment

22   would soon be arriving at HERNANDEZ JR.'s location.

23        188. On or about September 22, 2009, defendant FELIX, in a

24   telephone conversation using coded language, told defendant

25   HERNANDEZ JR. to hold onto the methamphetamine that HERNANDEZ JR.

26   had and to remove other methamphetamine inside their van's hidden

27   compartment.

28

1    189. On or about September 24, 2009, defendant MEDINA, in

2  telephone conversations using coded language, discussed with

3  defendant HERNANDEZ JR. methamphetamine that would be ready for

4  pick up the next day.

5    190. On or about September 25, 2009, defendant MEDINA, in a

6  telephone conversation using coded language, attempted to

7  convince defendant HERNANDEZ JR. to reduce the price he was

8  charging for methamphetamine:

9    191. On or about September 25, 2009, defendant HERNANDEZ

10  JR., in telephone conversations using coded language, told

11  defendant FELIX that when defendant A. HERNANDEZ arrived,

12  HERNANDEZ JR. would give her drug proceeds so that she could put

13  the drug proceeds away.

14    192. On or about September 26, 2009, defendant ROMAN, in a

15  telephone conversation using coded language, discussed with an

16  unindicted co-conspirator the prices of pounds of

17  methamphetamine.

18    193. On or about September 26, 2009, defendant ROMAN, in a

19  telephone conversation using coded language, told an unindicted

20  co-conspirator that ROMAN would inquire with his source of supply

21  regarding the price of an ounce of methamphetamine.

22    194. On or about September 28, 2009, defendant ROMAN, in a

23  telephone conversation using coded language, told an unindicted

24  co-conspirator that ROMAN was waiting for a shipment of

25  methamphetamine and would show the unindicted co-conspirator the

26  methamphetamine when it arrived.

27    195. On or about September 28, 2009, defendant FELIX, in a

28  telephone conversation using coded language, told defendant

- 40 -

HERNANDEZ JR. to pick up drug proceeds from defendant ROBLEDO in Las Vegas, Nevada.

196. On or about September 29, 2009, defendant NEL, in a telephone conversation using coded language, told defendant ROMAN that NEL would be sending an unindicted co-conspirator to ROMAN's location to pick up drug proceeds, and ROMAN said he had approximately $13,000 for NEL.  In the same conversation, ROMAN told NEL that one pound of methamphetamine was going for approximately $13,500 in his area.

197. On or about October 4, 2009, defendant HERNANDEZ SR., in a telephone conversation using coded language, ordered ten pounds of methamphetamine from defendant FELIX at price of $13,000 per pound, and FELIX noted that he had 17 pounds of methamphetamine available for sale.

198. On or about October 7, 2009, defendant FELIX, in a telephone conversation using coded language, told defendant HERNANDEZ JR. to collect drug proceeds from defendant HERNANDEZ SR. in Los Angeles, California, and drug proceeds from defendant ROBLEDO in Las Vegas, Nevada, and then take the drug proceeds to defendant COVARRUBIAS in Phoenix, Arizona.

199. On or about October 7, 2009, defendant HERNANDEZ SR., in a telephone conversation using coded language, reminded defendant HERNANDEZ JR. to pick up papers for a car HERNANDEZ JR. would be driving the next morning to Las Vegas, Nevada, and Phoenix, Arizona; and HERNANDEZ JR. asked HERNANDEZ SR. to tell defendant A. HERNANDEZ to leave drug proceeds on the bed of their home so that HERNANDEZ JR. could pick them up before he left.

1    200. On or about October 8, 2009, defendant HERNANDEZ JR.

2    possessed, in a hidden compartment in the vehicle he was driving,

3    approximately $31,000 in drug proceeds in Henderson, Nevada.

4    201. On or about October 8, 2009, defendant HERNANDEZ JR.,

5    in a telephone conversation using coded language, told defendant

6    FELIX to get rid of all the telephones because the police found

7    the drug proceeds inside HERNANDEZ JR.'s vehicle.

8    202. On or about October 8, 2009, defendant HERNANDEZ JR.,

9    in a telephone conversation using coded language, told defendant

10   HERNANDEZ SR. to get rid of all the drugs and drug proceeds in

11   their house because the police had discovered the drug proceeds

12   inside HERNANDEZ JR.'s vehicle; and HERNANDEZ SR. asked if

13   HERNANDEZ JR. had hidden the drug proceeds inside the hidden

14   compartment of HERNANDEZ JR.'s vehicle, which HERNANDEZ JR.

15   confirmed.  HERNANDEZ SR. then said that officers must know about

16   their drug trafficking activities and that they would have to

17   change their telephone numbers.

18   203. On or about October 8, 2009, defendant HERNANDEZ JR.,

19   in a telephone conversation using coded language, told an

20   unindicted co-conspirator that the police found $50,000 in drug

21   proceeds inside HERNANDEZ JR.'s vehicle, and that if HERNANDEZ

22   JR. had been armed when the police seized the drug proceeds, he

23   would have shot the police officer.

24   204. On or about October 16, 2009, defendant HERNANDEZ JR.,

25   in a telephone conversation using coded language, told an

26   unindicted co-conspirator that HERNANDEZ JR. needed two to three

27   firearms.

28

1    205. On or about October 29, 2009, defendant MEDINA
2    possessed approximately 526.4 grams of methamphetamine at his
3    residence in Inglewood, California.
4        206. On or about November 24, 2009, defendant NEL, in a
5    telephone conversation using coded language, discussed with an
6    unindicted co-conspirator a shipment of drugs for the coming days
7    that would be delivered by defendant C. SANDOVAL, and NEL talked
8    about fixing a malfunctioning hidden vehicle compartment.
9        207. On or about November 24, 2009, defendant NEL, in a
10   telephone conversation using coded language, discussed with an
11   unindicted co-conspirator that transporting drugs on Thanksgiving
12   Day would be easier because the U.S.-Mexico border would not be
13   closely watched by law enforcement, and NEL discussed an upcoming
14   shipment of drugs into the United States.
15       208. On or about November 25, 2009, defendant NEL, in a
16   telephone conversation using coded language, informed an
17   unindicted co-conspirator that defendant C. SANDOVAL was en route
18   to a location in Southern California to deliver cocaine.
19       209. On or about November 25, 2009, defendant C. SANDOVAL,
20   on behalf of defendant NEL, delivered approximately ten kilograms
21   of a mixture or substance containing a detectable amount of
22   cocaine to a "stash house" in Pomona, California.
23       210. On or about November 25, 2009, defendant LAUREL
24   possessed approximately ten kilograms of a mixture or substance
25   containing a detectable amount of cocaine that had been received
26   from defendant C. SANDOVAL at a "stash house" in Pomona,
27   California.
28

- 43 -

1    211. On or about November 25, 2009, defendant C. SANDOVAL,
2    in a telephone conversation using coded language, informed
3    defendant NEL that C. SANDOVAL had delivered the shipment of
4    cocaine on behalf of NEL, and NEL told C. SANDOVAL that he could
5    return.

6    212. On or about December 4, 2009, defendant NEL, in a
7    telephone conversation using coded language, informed an
8    unindicted co-conspirator that NEL would be sending him a
9    shipment of cocaine the next day, and NEL told the unindicted co-
10   conspirator to make sure that the unindicted co-conspirator had
11   an enclosed location to receive the cocaine shipment.

12   213. On or about December 5, 2009, defendant ZAZUETA
13   transported approximately ten kilograms of a mixture or substance
14   containing a detectable amount of cocaine from Mexico to
15   Paramount, California, on behalf of defendant NEL.

16   214. On or about December 5, 2009, defendant RUBIO entered a
17   vehicle driven by defendant ZAZUETA that contained approximately
18   ten kilograms of a mixture or substance containing a detectable
19   amount of cocaine, for the purpose of directing ZAZUETA to the
20   "stash house" in Paramount, California, where the cocaine was to
21   be stored.

22   215. On or about December 7, 2009, defendant FELIX directed
23   an unindicted co-conspirator to transport to him approximately
24   $211,000 in drug proceeds.

25   216. On or about December 7, 2009, co-conspirator
26   Manjarrez-Arreola possessed approximately $211,000 in drug
27   proceeds on behalf of defendant FELIX in Phoenix, Arizona.

28   217. On or about March 26, 2010, defendant C. SANDOVAL drove

into the garage of defendant URIARTE's residence in Paramount, California, to meet with URIARTE.

218. On or about March 26, 2010, defendant URIARTE possessed approximately $42,933 in drug proceeds at his residence in Paramount, California.

219. On or about March 29, 2010, defendant OCEGUERA received approximately 9.971 kilograms of a mixture or substance containing a detectable amount of cocaine at his residence in Downey, California, from defendant C. SANDOVAL, on behalf of defendant NEL.

220. On or about July 31, 2010, defendant C. SANDOVAL possessed approximately 10 kilograms of a mixture or substance containing a detectable amount of cocaine, on behalf of defendant NEL, when he crossed the border from Mexico into Arizona, on his way to distribute the cocaine in Southern California.

221. On or about August 24, 2010, defendant RIVAS, on behalf of defendant R. SENDIS, delivered to another confidential informant posing as a methamphetamine buyer approximately 10.5 grams of methamphetamine in a parking lot in Whittier, California.

1

COUNT TWO

2

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

3

On or about February 27, 2009, in Los Angeles County, within

4

the Central District of California, defendants ROGELIO SENDIS-

5

RAMIREZ, also known as ("aka") "Rogelio Sendiz-Ramirez," aka

6

"Juan," aka "Roger," and HARRY MADERA, aka "Boricua," knowingly

7

and intentionally possessed with intent to distribute at least

8

five grams, that is, approximately 24.2 grams, of

9

methamphetamine, a Schedule II controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about March 10, 2009, in Los Angeles County, within the Central District of California, defendants ROGELIO SENDIS-RAMIREZ, also known as ("aka") "Rogelio Sendiz-Ramirez," aka "Juan," aka "Roger," and HARRY MADERA, aka "Boricua," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 26.8 grams, of methamphetamine, a Schedule II controlled substance.

1    COUNT FOUR

2    [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

3        On or about April 17, 2009, in Los Angeles County, within

4    the Central District of California, defendants ROGELIO SENDIS-

5    RAMIREZ, also known as ("aka") "Rogelio Sendiz-Ramirez," aka

6    "Juan," aka "Roger," and DANIEL ZAVALA, aka "Perico," knowingly

7    and intentionally possessed with intent to distribute at least

8    50 grams, that is, approximately 108.1 grams, of methamphetamine,

9    a Schedule II controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about June 10, 2009, in Los Angeles County, within the Central District of California, defendants ROGELIO SENDIS-RAMIREZ, also known as ("aka") "Rogelio Sendiz-Ramirez," aka "Juan," aka "Roger," HARRY MADERA, aka "Boricua," DAVID ORTIZ, and JAMIE GAETA knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 110.3 grams, of methamphetamine, a Schedule II controlled substance.

1

## COUNT SIX

2                [21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

3        On or about June 24, 2009, in Los Angeles County, within the

4   Central District of California, defendants JULIO VALDEZ, also

5   known as ("aka") "El Viejo," aka "Daniel Gamez Castro," EDUARDO

6   GUTIERREZ-QUINTERO, aka "Neto," aka "Eddie," and JUAN FRANCISCO

7   SOTO knowingly and intentionally possessed with intent to

8   distribute at least 50 grams, that is, approximately 1,691 grams,

9   of methamphetamine, a Schedule II controlled substance.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about August 19, 2009, in Los Angeles County, within the Central District of California, defendants JOSE FELIX-BARRAZA, also known as ("aka") "Chepe," aka "Compadre," aka "Compa," aka "Don Felix," aka "Don Jose," CLAUDIA "LAST NAME UNKNOWN," EDUARDO GUTIERREZ-QUINTERO, aka "Neto," aka "Eddie," MARTIN HERNANDEZ, JR., ARACELI "LAST NAME UNKNOWN," CARLOS ALVARADO-MEDINA, and JOSE JOHNNY COVARRUBIAS-QUINTERO knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 4,358 grams, of methamphetamine, a Schedule II controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT EIGHT

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about August 24, 2009, in Los Angeles County, within the Central District of California, defendants SALVADOR SENDIS-RAMIREZ, also known as ("aka") "Salvador Sendiz-Ramirez," aka "Sal," aka "Salva," and DAVID ORTIZ knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 197.8 grams, of methamphetamine, a Schedule II controlled substance.

COUNT NINE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about October 29, 2009, in Los Angeles County, within the Central District of California, defendant LEONEL MEDINA-RIOS knowingly and intentionally possessed with intent to distribute at least 50 grams, that is, approximately 526.4 grams, of methamphetamine, a Schedule II controlled substance.

COUNT TEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)]

On or about November 25, 2009, in Los Angeles County, within the Central District of California, defendants NEL LNU, also known as "Natanael," CARLOS SANDOVAL-CARBAJAL, and BEATRIZ LAUREL knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately ten kilograms, of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT ELEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)]

On or about December 5, 2009, in Los Angeles County, within the Central District of California, defendants NEL LNU, also known as "Natanael," BLADY ZAZUETA-FELIX, and RICARDO RUBIO-GARCIA knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately ten kilograms, of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT TWELVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)]

On or about March 29, 2010, in Los Angeles County, within the Central District of California, defendants NEL LNU, also known as "Natanael," CARLOS SANDOVAL-CARBAJAL, and DARIO OCEGUERA-MENDOZA knowingly and intentionally possessed with intent to distribute at least five kilograms, that is, approximately 9.971 kilograms, of a mixture or substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THIRTEEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about August 24, 2010, in Los Angeles County, within the Central District of California, defendants ROGELIO SENDIS-RAMIREZ, also known as ("aka") "Rogelio Sendiz-Ramirez," aka "Juan," aka "Roger," and MANUEL RIVAS, aka "Manny," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 10.5 grams, of methamphetamine, a Schedule II controlled substance.

1                        FORFEITURE ALLEGATION

2              [18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853,

3                     and 28 U.S.C. § 2461(c)]

4          1.    Pursuant to Title 18, United States Code, Section

5    981(a)(1)(C), Title 21, United States Code, Section 853, and

6    Title 28, United States Code, Section 2461(c), each defendant who

7    is convicted of the offenses set forth in Counts One through

8    Thirteen of this Second Superseding Indictment shall forfeit to

9    the United States the following property:  All right, title, and

10   interest in any and all property, real or personal, which

11   constitutes or is derived from proceeds traceable to a violation

12   of Title 18, United States Code, Section 1961(1) (an offense

13   constituting "specified unlawful activity" as defined in Title

14   18, United States Code, Section 1956(c)(7)(A)).  Specific

15   property subject to forfeiture for the reasons set out above

16   includes, but is not limited to, a sum of money equal to the

17   total amount of money involved in each offense, or conspiracy to

18   commit such offense, for which the defendant is convicted.  If

19   more than one defendant is convicted of an offense, the

20   defendants so convicted are jointly and severally liable for the

21   amount involved in such offense.

22         2.    Pursuant to Title 21, United States Code, Section

23   853(p), as incorporated by Title 28, United States Code, Section

24   2461(c), each defendant shall forfeit substitute property, up to

25   the value of the amount described in paragraph 1, if, by any act

26   or omission of the defendant, the property described in paragraph

27   1, or any portion thereof, cannot be located upon the exercise of

28   due diligence; has been transferred, sold to, or deposited with a

                                  - 58 -

1 third party; has been placed beyond the jurisdiction of the

2 court; has been substantially diminished in value; or has been

3 commingled with other property that cannot be divided without

4 difficulty.

5                                        A TRUE BILL

6

7                                        /S/
                                         _____
8                                        Foreperson

9 ANDRÉ BIROTTE JR.
  United States Attorney
10
11
  ROBERT E. DUGDALE
12 Assistant United States Attorney
  Chief, Criminal Division
13

14
  ELIZABETH R. YANG
15 Assistant United States Attorney
  Chief, Violent and Organized Crime Section
16

17
  MICHAEL J. STERN
18 E. MARTIN ESTRADA
  Assistant United States Attorneys
19 Violent and Organized Crime Section

20

21

22

23

24

25

26

27

28